**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NANCY R. MURRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.   04 C 7668 |
| v. | ) | |
| | ) | |
| SUNRISE CHEVROLET, INC., and | ) | HONORABLE DAVID H. COAR |
| TRIAD FINANCIAL CORPORATION, | ) | |
| doing business as ROADLOANS, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     BACKGROUND FACTS**

Plaintiff Nancy R. Murray ("Murray") brought this action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. Plaintiff and her husband filed for personal bankruptcy in 2002. Shortly thereafter, they began to receive large quantities of mail purporting to contain credit offers from lenders who focus on borrowers with less-than-optimal credit. One of the mailings she received was a flyer from defendants Sunrise Chevrolet, Inc. ("Sunrise") and Triad Financial Corporation, d/b/a Roadloans ("Triad"). Triad and Sunrise had obtained mailing information for 14,000 Illinois consumers whose credit scores were within a certain range and who had recently filed for bankruptcy or had a car repossessed. The flyer, sent to 14,000 Illinois residents, including Murray, stated that Murray had been pre-approved for an automobile loan of up to $19,500 and that information contained in her credit bureau report had been obtained from a consumer reporting agency for the purpose of selecting her for the offer. At the bottom of the

flyer, in much smaller type in a different font, a disclosure indicated that information from Murray's credit report had been used in selecting her for the offer. The last sentence of the disclosure provided information about how consumers can exercise their privacy rights and opt out of receiving future offers. Murray alleges that the flyer violates FCRA because it does not represent a "firm offer of credit," 15 U.S.C. § 1681b(c)(1)(B)(i), and because the opt out provisions were not displayed in the required "clear and conspicuous" manner, 15 U.S.C. § 1681m(d)(1)(D). Now pending before this Court is Murray's motion to certify a plaintiff class pursuant to Rule 23 of the Federal Rules of Civil Procedure, which is fully briefed and ripe for decision. Plaintiff defines the class as "all persons with Illinois addresses to whom defendants sent [the flyer] on or after Nov[ember] 24, 2002 and before Dec[ember] 14, 2004." (Pl.'s Mtn. for Class Cert.)

## II. ANALYSIS

Under Rule 23(a), a proposed class must satisfy four conditions before a court will grant certification: 1) numerosity; 2) commonality; 3) typicality; and 4) adequacy of representation. Fed. R. Civ. P. 23(a). Defendants contend that Murray cannot establish that she is an adequate class representative or that the class meets the commonality and typicality requirements. In addition to Rule 23(a), a putative class plaintiff must also satisfy at least one of the conditions in Rule 23(b). Murray contends that a class action will be superior to other available methods of resolving the controversy in this case, under Rule 23(b)(3). Defendants, predictably, disagree, arguing that individual issues predominate over common questions of law and fact and that individual litigation is a more fair and efficient method of adjudicating the dispute.

### A. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Although there is no "magic number" of class members for numerosity purposes, case law indicates that when a class numbers at least 40, joinder will be considered impracticable. *Swanson v. Am. Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969). The proposed class would consist of every Illinois consumer who received a flyer from the defendants. The parties agree that 14,000 flyers were mailed to Illinois residents. Numerosity is clearly satisfied.

      **B.**      **Commonality**

Under Rule 23(a)(2), there must be a question of law or fact common to the class. In addition, Rule 23(b)(3) requires that the common questions of law or fact predominate over questions pertaining to individual class members. Commonality generally exists when the defendant has engaged in "standardized conduct" towards the members of the proposed class. *Smith v. Nike Retail Servs., Inc.*, ___ F.R.D. ___, 2006 WL 715788, at *4 (N.D. Ill. Mar. 22, 2006). Defendant Triad challenges commonality, contending that some of the consumers who received the flyer were interested in the offer and called the phone number provided on the flyer to obtain their final pre-approved credit amount. In the alternative, Triad notes that some consumers, like Murray, were uninterested in the offer but, unlike Murray, promptly called the toll-free opt-out number provided in the disclaimer section. Murray testified at her deposition that she had no interest in the flyer's offer and did not call to learn her final pre-approval amount. But she did not call the opt-out number until several months later, when her attorney instructed her to do so. Murray counters that the "common nucleus of operative fact" in the class is that the defendants obtained consumer report information without permission for the purpose

of sending the flyer to Murray and the members of the proposed class. Plaintiff identifies the dispositive issues as: 1) whether the "firm offer of credit" was meaningful; and 2) whether the disclosure of the consumer's privacy rights was "clear and conspicuous." To determine whether the flyer represents a "firm offer of credit" requires an analysis of whether it makes a "meaningful offer" and whether the consumer's privacy rights were properly disclosed. Murray contends these are classwide questions as is the willfulness of any violation by the defendants. According to Murray, the only individual issue is the identity of the consumers to whom defendants sent the flyers. But this information, as Murray notes, should be readily ascertainable. This Court finds that Murray has made a sufficient showing that the class members share at least one common question, despite their individual reactions to the flyer: whether the defendants accessed their credit information without their permission for the purpose of sending them the FCRA-violating flyer. That being so, Murray has satisfied commonality.

  **C.**  **Typicality**

A plaintiff's claim is typical of a proposed class if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cit. 1983). Further, "factual distinctions between the claims of the named class members and those of other class members" do not necessarily defeat a finding of typicality. *Id*. at 233. The issue instead turns on whether the plaintiff's claims "have the same essential characteristics" as those of the proposed class members. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 599 (7th Cir. 1993). Triad raises the same arguments it raised to commonality. Murray contends that each class member has been subject to the same practice as the named plaintiff. As with

commonality, Murray has made a sufficient showing that her claims are typical of those of the other class members. This Court finds Murray has met the typicality requirement.

### D. Adequacy of Representation

Rule 23(a)(4) requires that the named plaintiff "fairly and adequately protect the interests of the class." The plaintiff must not have claims antagonistic to or in conflict with those of other class members and must have sufficient interest in the case's outcome to be a vigorous advocate. Defendants contend that Murray cannot meet the adequacy prong because of her role as named class representative in at least seven pending actions alleging identical claims against other defendants. According to defendants, Murray–on her own and because of her relationship with family members who have filed FCRA claims against yet more defendants–will experience "inevitable conflicts of interest" between the classes she seeks to represent. On this very point, the Seventh Circuit recently weighed in. After noting that although "[a] person who seeks out opportunities to sue could do so in ways that injure other class members," the appellate court stated that "[n]othing about the frequency of Murray's litigation implies that she is less suited to represent others than is a person who received and sued on but a single offer." *Murray v. GMAC Mortgage*, 434 F.3d 948, 954 (7th Cir. 2006). "Repeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions." *Id*. The fact that Murray has sued multiple defendants for committing the same alleged statutory violation "does not injure any other potential borrower." *Id*. Murray is not receiving financial compensation for serving as a class plaintiff. She seeks statutory money damages, as will the class members, for her claims. Murray has established that she will serve as an adequate class representative.

The second consideration in determining adequacy of representation is whether plaintiff's counsel is qualified, experienced, and able to conduct the proposed litigation. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Plaintiff's counsel has appeared before multiple courts in this Circuit and has an extensive practice, focused on consumer protection issues. Counsel has litigated numerous FCRA cases, including *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004). Plaintiff's counsel satisfies the requirements of the adequacy of representation prong.

### E. Rule 23(b)(3)

Under Rule 23(b)(3), a plaintiff must show that common questions of law or fact predominate over individual questions, and "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). "The matters pertinent to the finding [under Rule 23(b)(3) ] include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

The predominance inquiry is significantly more demanding than the commonality requirement of Rule 23(a)(2). *Amchem Prods.*, 521 U.S. at 623-24. If individual issues predominate over common questions, then a class action generally is not a superior method for

resolving the controversy because managing the disparate issues involved will be inefficient. *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001).

Plaintiff alleges that defendants violated FCRA when they accessed the proposed class members' consumer reports without their consent and without a lawful reason for the purpose of sending them a sales solicitation. Specifically, Plaintiff contends that the defendants intended their flyer to qualify under the "firm offer of credit" exception to FCRA's prohibition on accessing consumer credit information without express authorization. Murray argues, however, that the "offer" on the flyer was "vague and totally lacking in terms" and had no value beyond a solicitation for loan business. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004).

In addition, Plaintiff contends that defendants accessed consumer credit information in bulk and sent mailings to those consumers who satisfied certain criteria set by defendants. The intent in accessing the information and sending the mailing was the same for each member of the class. As support, Plaintiff notes that each member of the class got the same pre-printed flyer, containing the same "pre-approval notice" and consumer disclosure. The FCRA violation alleged is based on defendants' actions in accessing consumer credit information and sending a mailing that allegedly does not contain a "firm offer of credit." This Court has previously denied defendants' motions to dismiss, which raised substantially similar arguments, finding that Plaintiff adequately stated a claim for a FCRA violation. *See* No. 04-7668, Mem. Op. (N.D. Ill. Sept. 15, 2005).

Defendants contend that individual questions predominate. Specifically, defendants argue that FCRA permits statutory damages only for a willful failure to comply with its requirements. This would require, according to Triad and Sunrise, an individual determination for each of the

14,000 flyer recipients that defendants "knowingly and intentionally" violated the FCRA, knowing that its acts "impinge[d] on the rights of others." *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 934 (7th Cir. 2004). Further, defendants contend that because the common dispositive question in the case is whether the "firm offer of credit" was "meaningful" under *Cole*, the court will have to conduct 14,000 individualized "meaningfulness" inquiries. If true, this would clearly defeat the predominance requirement. But this argument is unavailing.

The Seventh Circuit, in a recent opinion regarding another of Murray's cases, addressed these very issues. *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006). As to defendants' argument about the need for individualized determinations about whether a "firm offer of credit" was made, the *GMAC Mortgage* court stated, "The statutory definition of 'firm offer' does not ask about how consumers *react*, however; it asks what the offeror has done-what terms have been extended, whether they are honored if a consumer accepts." *GMAC Mortgage*, 434 F.3d at 955. Further, the Seventh Circuit elaborated on its holding in *Cole*. "We do not read *Cole*, however, to require a consumer-by-consumer evaluation. An offer has value to 'the consumer' if it is useful to the *normal* consumer. *Cole*'s objective was to separate *bona fide* offers of credit from advertisements for products and services, determining from '*all* the material conditions that comprise the credit product in question ... [whether it] was a guise for solicitation rather than a legitimate credit product.'" *GMAC Mortgage*, 434 F.3d at 955-56 (citing *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 728 (7th Cir. 2004)). If such a determination depends on the individual circumstances of the offer's recipients, then potential lenders cannot know whether it is lawful to obtain credit information at all because they will not know the idiosyncracies of each individual consumer's financial situation. To follow defendants' reasoning "would make it

impossible for any potential lender to know *ex ante* whether it is entitled to obtain credit information." *Id*. at 956.

In addition, defendants argue that because FCRA places no cap on statutory damages that can be awarded in a class action, the risk of a disproportionate–and potentially, crushing–damage award exists. By comparison, both the Truth in Lending Act, 15 U.S.C. § 1640(a)(2)(B), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(2)(B), do have damages caps. But the substantial nature of a potential damages award, even one based on defendants' allegedly "technical" violations of FCRA, is not a proper ground on which to deny class certification. *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953-54 (7th Cir. 2006). In addition, the fact that FCRA does not have a damages cap, although other consumer credit statutes do, is not germane to the Rule 23(b)(3) inquiry. The statute must be enforced in its present form, not in the form that would be most convenient to the defendants.

Defendants also contend that the potential award will be "grossly disproportionate" to the harm suffered. The statute permits damages of $100 to $1,000 for FCRA violations. Because there are 14,000 potential class members, an award could be as great as $14 million. Plaintiff argues that excessive damages should be treated as a question related to damages, not to class certification; defendants concede that certification should not be denied "solely because of the possible financial impact it would have on a defendant." *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 351 (N.D. Ill. 2002). Although an extremely large award can raise due process issues, particularly when it is highly disproportionate to the harm suffered, denial of class certification is not necessarily the preferred, or even the appropriate, option. An excessive award may be reduced, if warranted, but such constitutional limits "are best applied after a class has

been certified." *GMAC Mortgage*, 434 F.3d at 954 (citing *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003)). This is a case where class certification presents the most efficient means of adjudicating the controversy. The class is quite numerous but the potential recovery for each member quite small. Indeed, it is exceedingly unlikely that many individuals would wish to go to court for a potential recovery of $100–or that they could find counsel willing to represent them.

## Conclusion

For the foregoing reasons, Plaintiff's motion to certify a class is granted. The class shall consist of of all persons with Illinois addresses to whom defendants sent the "pre-approval notice" flyer at issue in this case on or after November 24, 2002 and before December 14, 2004.

Enter:

/s/ David H. Coar
_____

David H. Coar
United States District Judge

Dated: **March 30, 2006**