IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NANCY R. MURRAY | ) |
| Plaintiff, | ) |
| | ) No. 04 C 7668 |
| v. | ) |
| SUNRISE CHEVROLET, INC., and | ) JUDGE DAVID H. COAR |
| TRIAD FINANCIAL CORPORATION, | ) |
| d/b/a ROADLOANS | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This is a class action suit against a car dealership and a lending company on behalf of all persons with Illinois addresses who received the "pre-approval notice" flyer at issue in this case on or after November 24, 2002 and before December 14, 2004. Class Representative Nancy R. Murray filed a class action Complaint alleging that Defendant Sunrise Chevrolet, Inc. and Defendant Triad Financial Corporation ("Triad"), d/b/a RoadLoans, obtained consumer credit reports for an impermissible purpose in violation of the Fair Credit Reporting Act. 15 U.S.C. § 1681 *et seq*. Now before this Court are the parties' cross-motions for summary judgment and Plaintiff's motion for an order deeming certain statements of material fact admitted.

**Background Facts**

Unless otherwise noted, the following undisputed facts are taken from the parties' Local Rule 56.1 statements of undisputed fact. Plaintiff Murray is a resident of Joliet, Illinois. In mid-July 2004, Murray received a mailing from defendant Sunrise Chevrolet, Inc. ("Sunrise"), a car dealership with a location in Glendale Heights, Illinois, and defendant Triad Financial

Corporation ("Triad") a automobile financing company that does business in Illinois under the name "RoadLoans." The text of the mailer reads:

## PRE-APPROVED NOTICE

Dear Nancy,
You have been pre-approved for an auto loan up to $19,500*. Information contained in your credit bureau report, obtained from a consumer reporting agency, was used in conjunction with selecting you for this offer.

The amount of the loan may vary. For security reasons, the pre-approved amount is not listed. Just call with your pint number listed below, to find out what your pre-approval amount is: 800-293-8411.

**SECOND CHANCE FINANCING AVAILABLE HERE.** This offer has been extended to you because you have satisfied criteria for creditworthiness used to select consumers for this pre-approved offer.

Your pre-approval is valid at Sunrise Chevrolet (see below) who has agreed to mark down all their new and used car inventory to keep within the guidelines of your pre-approval.

As low as **ZERO CASH DOWN PAYMENT**: May times your trade-in is sufficient for a down payment.

This is a unique offer and we want you to take advantage of your pre-approved auto loan but you must come in as soon as possible, as this offer will expire on 7/24/04. Come early for the best selection on over 600 new and pre-owned vehicles.

In a black box the width of the Notice with white text, the consumer is instructed to bring to the dealer a recent pay stub, a phone bill at the consumer's residence, a utility bill with the consumer's name on it, and "yourself and/or your trade." If the consumer wishes to determine the "pre-approval amount" of the loan offered, the Notice directs her to call "our live 24-Hour Pre-Approval Specialist: 800-293-8411" and provide the pin number listed on the Notice. "Your identity will be verified and your pre-approval amount and personal pre-approval code will be given. Write down your pre-approval amount and personal pre-approval code in the spaces

below. Present this letter upon entering the dealership listed below. (Note: Be prepared to accept immediate delivery of your new or used vehicle.)" The Notice then reports that "Your Authorized Dealer is: Sunrise Chevrolet" and provides a street address and the toll-free number already listed. At the bottom of the flyer, in much smaller type and a different font, the following text appears:

> You have been pre-approved for an auto loan by RoadLoans™. This offer is available for 30 days from the date of this letter, and is conditioned upon obtaining a first lien security interest in your vehicle. You received this offer based on information in your credit report and upon your satisfying certain predetermined credit criteria used to select individuals for this offer. This offer is conditioned upon verification that you continue to meet the specific criteria used to select you for this offer. Credit may be refused if you no longer meet those criteria or other applicable criteria bearing on creditworthiness or if your vehicle does not meet collateral guidelines. There is a limit of one pre-qualified credit offer per customer, which may be applied to an eligible new or used vehicle. Specific credit terms such as APR, length of contract, payment amount, and amount of credit, are subject to RoadLoans™ finance program parameters. Your pre-approved reservation code is ROL3. Just visit www.roadloans.com and complete the application form. RoadLoans™ assumes no responsibility for incorrect information supplied by various credit reporting agencies. You have the right to prohibit the use of information in your file maintained by the consumer reporting agencies from being used in transactions not initiated by you by calling 1-888-5OPTOUT (1-888-567-8688), or writing Equifax Options, P.O. Box 740123, Atlanta, GA 30374-0123.

Murray had not given written permission to Sunrise or Triad to obtain her consumer report. In addition, the Notice does not state the minimum amount of credit to be extended to the consumer, the interest rate on the loan, the method by which interest would be computed, the length of the loan repayment period, any applicable penalties, fees, costs, or charges, or Triad's underwriting guidelines.

Sunrise used MAN Marketing, a marketing company, in some of its promotional and advertising efforts in 2004. The account executive managing Sunrise's account at MAN

presented Sunrise's general manager, Dan Kurtz, with a sample direct mail flyer some time in 2004. Sunrise decided to use the flyer as part of a marketing program. The MAN account executive contracted with Direct Mail Express, of Daytona Beach, Florida, to mail the flyer. The work order specified that 14,000 copies of the flyer would be used, and Direct Mail Express was to "start with Bankruptcies June 1-30," and to "fill remaining names from Beacon [FICO credit] score list 529-629 - with 20 mile radius from 60139." The order also requested the "telemall package" which would set appointments for the dealership.

The advertising flyer Murray received was designed by R.L. Polk & Company, which does business as PolkOne ("Polk"), or Direct Mail Express. It was created pursuant to a Service Agreement between Polk, Masada Direct Corporation ("Masada"), and Triad. Under this agreement, Polk agreed to develop all materials for marketing pre-approved offers to consumers who satisfied certain initial lending criteria set by Triad. Polk also warranted that it would ensure that the flyer complied with applicable law, including FCRA. Polk contracted to solicit mailing contracts from dealerships and marketing companies. It would give the dealership's requirements to Masada, which matched the dealer's credit criteria with Triad's and then created a mailing list for use in a direct mailing. Triad provided lending criteria in order for Polk and Masada to qualify consumers for pre-approved credit offers. Masada used an automated system to gather consumer names, addresses, and "other non-unique identifiers" from Equifax Information Services and provide that information to Polk and other entities with whom it did business. Direct Mail Express gave Sunrise's credit criteria to Polk, which provided it to Masada. In turn, Masada produced a mailing list for Polk. Direct Mail Express received the mailing list from Polk and sent the flyer to the consumers on the list, including Plaintiff. Triad had no contact with

Direct Mail Express. Under the service agreement, 14,000 flyers were mailed to individuals who lived within a twenty mile radius of Glendale Heights, Illinois, where Sunrise is located. No one at Triad or Sunrise saw the flyer before it was mailed. No one at Sunrise had any dealings with either Triad or RoadLoans. Sunrise's general manager did not know why RoadLoans was mentioned in the flyer and did not know until this lawsuit that RoadLoans was an affiliate or subsidiary of Triad.

A flyer recipient who called the 800 number listed on the flyer would reach Direct Mail Express, which has offices in Daytona Beach, Florida. A Direct Mail Express employee would ask the consumer a series of questions, presumably about her credit history, and then transmit the consumer's name, address, phone number, and an appointment time to Sunrise Chevrolet through a secure web site and by fax. If the consumer instead contacted the RoadLoans website provided on the flyer, she would fill out a credit application. RoadLoans' credit department would then approve or deny the application based in part on a review of the consumer's credit report. If approved, RoadLoans' sales department would call and email the consumer, and send a loan package, including a loan check, via overnight mail to the consumer. A consumer who went directly to Sunrise with the flyer would be treated no differently than a consumer who walked in off the street and would be taken through the "normal" sales process.

**Summary Judgment Standard**

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, courts "must construe all facts in

the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001). "If, however, the record as a whole 'could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *Id.* Once a motion for summary judgment has been filed, "the burden shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial." *Liu v. T&H Machine, Inc.*, 191 F.2d 790, 796 (7th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-movant must provide more than a "mere scintilla" of evidence to carry its burden under the summary judgment standard. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, weighing evidence, making credibility determinations, and drawing reasonable inferences are functions of a jury, not of a judge deciding a summary judgment motion. *Id.* at 255.

**Murray's Motion to Deem Certain Material Facts Admitted**

Murray moves to have certain material facts deemed admitted on the grounds that Defendants Sunrise and Triad failed to comply with the requirements of Local Rule 56.1 and this Court's standing order regarding motions for summary judgment. Specifically, Murray seeks an order deeming approximately sixteen paragraphs from her statement of material facts to be admitted. Defendants respond that their objections complied with the local rule, were proper, and did not violate this Court's standing order. As a general matter, this Court disfavors motions to strike and motions for orders to deem certain material facts admitted. This Court has considered the record, including the Rule 56.1 statements and responses from all parties. Murray's objections could have been made – and in many instances, were made – in her responsive fact

statements, as is proper. This Court grants Murray's motion as to paragraph 40 of her Statement of Material Facts, but denies it as to all other paragraphs.

**Private Right of Action**

Defendants contend that this suit must fail because Congress eliminated the private right of action for violations of § 1681m when it enacted the Fair and Accurate Credit Transactions Act of 2003, Pub.L. No. 108-159, 117 Stat. 1952 (2003) ("FACT Act"). The FACT Act amended numerous FCRA provisions. Section 311(a) of the FACT Act added subsection (h) to § 1681m of FCRA. *See* FACT Act, Pub. L. No. 108-159, § 311(a), 117 Stat. 1952, 1988-89 (2003). Several courts in this district and beyond have analyzed Section 311(a) of the FACT Act and have agreed that it eliminated a private right of action for violations of § 1681m. *See, e.g.*, *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006); *Putkowski v. Irwin Home Equity Corp.*, 423 F. Supp. 2d 1053 (N.D. Cal. Mar. 23, 2006) (Hamilton, J.); *Phillips v. New Century Fin. Corp.*, No. SACV050692DOCRNBX, 2006 WL 517653 (C.D. Cal. Mar. 1, 2006) (Carter, J.); *Tremble v. Town & Country Credit Corp.*, No. 05 C 2625, 2006 WL 163140 (N.D. Ill. Jan. 18, 2006) (Castillo, J.); *Hernandez v. Citifinancial Servs., Inc.*, No. 05 C 2263, 2005 WL 3430858 (N.D. Ill. Dec. 9, 2005) (Filip, J.); *McCane v. America's Credit Jewelers, Inc.*, No. 05 C 5089, 2005 WL 3299371 (N.D. Ill. Dec. 1, 2005) (Conlon, J.); *Murray v. Household Bank (SB), N.A.*, 386 F. Supp. 2d 993 (N.D. Ill. 2005) (Gettleman, J.); *Murray v. Cingular Wireless II, LLC*, No. 05 C 1334, slip op. (N.D. Ill. Nov. 2, 2005) (Manning, J.); *Pietras v. Curfin Oldsmobile, Inc.*, No. 05 C 4624, 2005 WL 2897386 (N.D. Ill. Nov. 1, 2005) (Conlon, J.); *Murray v. Cross Country Bank*, 399 F. Supp. 2d 843 (N.D. Ill. Aug. 15, 2005) (Zagel, J.). Instead, such violations shall be administratively enforced. 15 U.S.C. § 1681m(h)(8)(B) (2004).

Section 311(a) of the FACT Act had an effective date of December 1, 2004. 16 C.F.R. § 602.1 (2004). The Seventh Circuit recently discussed the FACT Act amendments in another one of this plaintiff's FCRA cases. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006). It noted that the amendments "do not apply to offers made before [the amendments'] effective date." *Id*. at 951. The defendants mailed the Pre-Approval Notice flyer to the class members in July 2004 and Murray filed the class complaint on November 24, 2004. Both of these events occurred before the effective date of Section 311(a). Thus, the FACT Act amendments do not apply to this litigation.

**Firm Offer of Credit**

Under FCRA, a consumer's credit report may only be obtained with the consumer's written consent or for certain permissible purposes. *See* 15 U.S.C. § 1681b(f). One such permissible purpose for obtaining a consumer's credit report is to make a "firm offer of credit" to the consumer. 15 U.S.C. § 1681b(c)(1)(B)(I). The statute defines a "firm offer of credit" as "any offer of credit ... to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(1). The offer may be conditioned on the consumer's compliance with certain other criteria specified in FCRA. *Id.* The plaintiff alleges that she never gave either Sunrise or Triad written permission to access her credit report. In addition, she contends that the mailing she received from the defendants, the "Pre-Approval Notice" does not qualify as a "firm offer of credit" under FCRA.

Triad argues that Murray cannot meet her burden of demonstrating that the "Pre-Approval Notice" was not a "firm offer of credit." According to Triad, Murray is unable to prove

-8-

that the offer of credit was vague or lacked meaningful terms because she did not follow the instructions on the Notice to contact Triad to request information about the terms or conditions of its offer. Instead of calling the toll-free number listed on the flyer or going to the Triad website (www.roadloans.com) to learn her credit pre-approval amount, Murray disregarded the Notice because she was not interested in the offer. Triad contends that Murray cannot establish that the offer was of no value if she never attempted to discover its material terms. In addition, Triad argues that because FCRA does not mandate that the terms of an offer be communicated in writing, Murray cannot prove that the offer was "vague" or "totally lacking in terms."

Sunrise argues that the portion of the flyer relating the terms of the pre-approved offer came from RoadLoans and specifically, were drafted by RoadLoans' counsel. The language is identical to the language in the exhibit to the Service Agreement between RoadLoans, Masada and Polk. The Service Agreement stated that each party thereto was specifically required to comply with all applicable state and federal laws, and singled out FCRA in particular. Further, Sunrise contends that Masada's president, Robert Brody, assured RoadLoans and Sunrise that the flyer would comply with FCRA. Finally, Sunrise argues that "it defies logic that Sunrise could ever have determined that the flyer ... did not constitute a firm offer of credit." Sunrise's Summ. J. Br. at 9.

Murray responds that the Pre-Approval Notice mailer violated FCRA's "firm offer of credit" requirements as set forth in recent Seventh Circuit case law. *GMAC Mortgage*, 434 F.3d 948; *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004). Specifically, Murray argues that *Cole* clarifies that an offer must contain specific terms, including interest rate, method of computing interest, and length of repayment period, to be considered "firm." The "Terms of Pre-

Approved Offer" section on the Notice states that "[s]pecific credit terms such as APR, length of contract, payment amount, and amount of credit, are subject to RoadLoans™ finance program parameters." (Pl.'s L.R. 56.1 Stmt., Ex. 1.)

In *GMAC Mortgage*, the Seventh Circuit noted that "the statutory definition of 'firm offer' does not ask about how consumers *react*, however; it asks what the offeror has done–what terms have been extended, whether they are honored if a consumer accepts." 434 F.3d at 955. In addition, "[a]n offer has value to 'the consumer' if it is useful to the *normal* consumer." *Id*. When deciding whether a creditor has adhered to FCRA, "a court need only determine whether the four corners of the offer satisfy the statutory definition (as elaborated in *Cole*), and whether the terms are honored when consumers accept." *Id*. at 956.

Triad's reading of "firm offer of credit" dramatically diminishes FCRA's effectiveness as a consumer protection statute, which is its explicit purpose. *See* 15 U.S.C. § 1681(a)(4). If Triad's approach were adopted, then anyone could access sensitive consumer information as long as they cobbled together some mosaic of communication methods whereby a persistent consumer could learn all the details of the offer: a few details about the credit limit in a mailing, a few more details about interest rate and compounding method by telephone, and information about terms of repayment on a website. But this fails to satisfy the statute. The "firm offer of credit" must have "sufficient value for the consumer to justify the absence of the statutory protection of his privacy." *Cole*, 389 F.3d at 726. If the Pre-Approval Notice provides no more information than does a mailer soliciting loan business by requesting consumers to call a toll-free number or visit a website, then it does not provide "sufficient value" to the consumer to justify access to her credit information.

The Pre-Approval Notice in this case simply says that the recipient has been "pre-approved for an auto loan up to $19,500." There is no guarantee that the recipient will be approved for any loan at all. There is no information about the applicable interest rate, length of contract, payment amount or method of computing interest. An interested consumer has to call Direct Mail Express's toll-free number to learn her "pre-approval amount." If she called the number, she would be asked questions about her credit history and put through a screen process; the Direct Mail Express employee would then make an appointment for her at the dealer. It is not clear from the record that the dealer would treat this consumer differently than any other consumer; in short, she might well go through the "normal" sales process at the dealer and have gained little or nothing from the flyer. In the small-print "Terms" section of the Notice, the consumer also was directed to "visit www.roadloans.com and complete the application form." This contradicts Triad's position that the Notice represented a firm offer of credit.

In *Cole*, the Seventh Circuit stated that "neither a creditor nor a debtor considers the amount of credit in a vacuum; both must know the other terms attached to that credit to determine whether it is advantageous to extend or to accept the offer." *Cole*, 389 F.3d at 728. Indeed, the terms of the offer "may be so onerous as to deprive the offer of any appreciable value." *Id*. It is not at all apparent from the Notice that the offer of credit would be honored. The Notice states that "[c]redit may be refused if you no longer meet [the specific criteria used to select you for this offer] or other applicable criteria bearing on creditworthiness or if your vehicle does not meet collateral guidelines." Further, it is undisputable that a number of material terms are completely absent from the Notice, including the interest rate, term of repayment, payment amount, and actual amount of credit. The Seventh Circuit instructs that a court "need

only determine whether the four corners of the offer satisfy the statutory definition." *GMAC Mortgage*, 434 F.3d at 956. Accordingly, this Court finds that the Notice does not constitute a "firm offer of credit." The flyer lacks crucial information about the loan's terms which would have enabled Murray to determine whether the offer had any value for her. Although the flyer is titled "Pre-Approved Notice," it simply serves as an invitation to the consumer to contact Roadloans or Sunrise for more details. *See Cole*, 389 F.3d at 728.

**Clear and Conspicuous Notice**

In addition to a "firm offer of credit," FCRA requires that a creditor must provide a "clear and conspicuous statement" of certain information to a consumer. 15 U.S.C. § 1681m(d)(1). The creditor must disclose that 1) it used information from the consumer's credit report in connection with the offer; 2) the consumer received the offer because she satisfied the creditor's criteria for credit worthiness; 3) failure to meet the section criteria or any applicable criteria bearing on credit worthiness may cause the creditor to rescind the offer; 4) the consumer has a right to prohibit her credit report from being used in connection with any credit transaction that she does not initiate; and 5) she may exercise her right to "opt out" of such credit transactions by contacting a specified toll-free number or by sending a written request to the credit agency at a given address. 15 U.S.C. § 1681m(d)(1). The statute does not define "clear and conspicuous" and case law provides little guidance. *Cole*, 389 F.3d at 729. Courts seeking to clarify the term's meaning have turned to commercial law and cases relating to the Uniform Commercial Code ("UCC") or the Truth In Lending Act ("TILA") for assistance. *Id.* (citing *Stevenson v. TRW Inc.*, 987 F.2d 288, 295 (5th Cir. 1993); *Tucker v. New Rogers Pontiac, Inc.*, 2003 WL 22078297, at *4 (N.D. Ill. Sept. 9, 2003); *Sampson v. Western Sierra Acceptance Corp.*, 2003 WL 21785612, at

*3-4 (N.D. Ill. Aug. 1, 2003)). In *Cole*, the Seventh Circuit likewise drew from UCC and TILA case law to determine the meaning of "clear and conspicuous" under FCRA. In so doing, the *Cole* court stated that no one "aspect of a notice" necessarily renders it "clear and conspicuous." *Cole*, 389 F.3d at 731. Courts must instead consider several factors, including "the location of the notice within the document, the type size used within the notice as well as the type size in comparison to the rest of the document" and any other means by which the notice is "set off," such as font style, spacing, and type formatting. *Id*. "In short, there must be something about the way that the notice is presented in the document such that the consumer's attention will be drawn to it." *Id*.

The defendants contend that the notice was clear and conspicuous and satisfied FCRA's requirements. As support, they argue that Murray was able to read the notice and even underlined the sentence which stated "You received this offer based on information in your credit report." Murray argues that it is irrelevant that she was able to read the notice if the notice fails to satisfy FCRA's requirements. This Court previously found that the notice provided on the flyer fails "any test of conspicuousness." In the September 25, 2005 memorandum opinion and order denying defendants' motions to dismiss, this Court stated:

> In this case, as in *Cole*, the notice appears in a single paragraph at the bottom of the flyer, in nine lines of text that take up little more than one inch of space. The text is printed in the smallest type on the page, in a different font than the body of the flyer. Defendant Triad contends that the notice is printed in bold face type, but the smallness of the type size renders it nearly impossible to determine whether that is the case. In addition, any font emphasis is diminished by the difference between the font in the body of the flyer and that in the notice. The font is so small that this Court finds it virtually impossible to distinguish any alleged bolding. By contrast, the remainder of the flyer is printed in larger, readable type, and uses all caps, bolding, underlining, and contrasting graphical elements to draw the reader's attention to other information. This Court determines that the notice fails any reasonable test of conspicuousness. The type

> in the notice is so small as to be almost unreadable and the alleged boldface is indistinguishable in the replicas presented to this Court. Unlike the remainder of the flyer, it is reasonable to find that the notice was designed to discourage the reader's attention.

(No. 04-7668, Mem. Op. & Order, at 7, Sept. 25, 2005 (footnotes omitted).) There is nothing to make this Court change that finding at this stage. The flyer fails to provide a "clear and conspicuous statement" as required by FCRA.

**Actual Damages**

Defendants argue that summary judgment should be entered in their favor because Murray cannot establish actual damages. Murray responds that she is not required to prove actual damages because the statute permits recovery of statutory damages as an alternative to actual damages. FCRA provides that "any person who willfully fails to comply with any requirement [of § 1681] with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A) (1997). As other courts in this District have noted, the statute uses the disjunctive "or" between the actual damages and the statutory damages clauses. In short, the plaintiff class members may still seek so-called statutory damages as an alternative remedy when they cannot prove and do not seek actual damages. The statute simply limits the amount of statutory damages available to a plaintiff if she cannot prove actual injury or harm. *See also Murray v. New Cingular Wireless*, 232 F.R.D. 295, 302-303 & n.8 (N.D. Ill. 2005) (citing *Reed v. Experian Info. Solutions, Inc.*, 321 F. Supp. 2d 1109, 1113 (D. Minn. 2004). As in the *New Cingular Wireless* case, defendants rely on the Seventh Circuit's opinion in *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603 (7th Cir. 2005), for the proposition that a FCRA plaintiff must prove actual injury in order to establish liability. But

*Ruffin-Thompkins* dealt with a claim under section 1681i(a)(1)(A) of the statute, which addresses a credit reporting agency's responsibility to reinvestigate disputed information in a consumer's credit file. That provision of the statute has been interpreted to require a plaintiff to demonstrate a "causal relation between the violation of the statute and the loss of credit, or some other harm" suffered by plaintiff. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (citations omitted).

If Murray was seeking damages for defendants' *negligent* noncompliance with the provisions of FCRA, then she would be required to demonstrate actual damages. 15 U.S.C. § 1681o(a)(1). But that is not what Murray seeks. In fact, Murray concedes that she is not seeking actual damages at all. Instead, she alleges *willful* noncompliance with the provisions of § 1681b(*l*) and § 1681m(d), which would entitle her to statutory damages. 15 U.S.C. § 1681n(a)(1)(A). Proof of actual damages is not required to prevail under the sections at issue in this case.

**Willful Noncompliance**

The defendants assert that they are entitled to summary judgment because Murray cannot prove that they were willfully noncompliant with the provisions of FCRA. If a plaintiff can demonstrate that a reporting agency or creditor willfully failed to comply with any FCRA requirement, then she can recover punitive damages under the statute. *See* 15 U.S.C. § 1681n. To establish a willful violation of FCRA, Murray must be able to demonstrate that Triad and Sunrise "knowingly and intentionally" violated the statute and in so doing, were "conscious" that their acts "impinge[d] on the rights of others." *Ruffin-Thompkins*, 422 F.3d at 610 (quoting *Wantz v.*

*Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004) (citing *Phillips v. Grendahl*, 312 F.3d 357, 368 (8th Cir. 2002)).

Murray argues that both Triad and Sunrise were aware of their legal obligations under FCRA but knowingly failed to comply with them when they mailed the Notice without a firm offer of credit or a clear and conspicuous statement that the consumer's credit report was accessed. Triad contends that it did not knowingly violate FCRA. As support, it contends that Murray has produced no evidence that Triad knew that the mere act of obtaining a prescreened list of consumers and mailing an offer to them violated FCRA. In addition, Triad offers evidence that it was not involved in the design of the mailing and did not receive a copy of the flyer before it was mailed. The flyer was created under a service agreement between Triad, Polk, and Masada, whereby Polk designed the mailings and warranted that they complied with applicable law. Triad contends that it reasonably relied on Polk's assurances and asserts that the Polk and Masada representatives with which it dealt were lawyers.

Sunrise asserts that there is no evidence that it knew that the mailer violated FCRA. Instead, Sunrise contends that its involvement with the mailer was negligent, at most, but does not rise to the level of willfulness. Sunrise contracted out the creation, drafting, and mailing of the flyer to third party marketing and direct mail companies with extensive experience in such promotional efforts. Indeed, Sunrise did not draft the flyer and had no authority to alter the language pertaining to the loan. The only language it added to the flyer related to the type of vehicle shown in a graphic, the price of the sample vehicle, the Sunrise name and address, a Chevy logo, and a splash graphic indicating that the dealership had Spanish-speaking employees. Moreover, the flyer was created and mailed prior to the *Cole* decision. Had Sunrise researched

FCRA at the time of mailing, it alleges that it would have reasonably believed that the flyer complied with pre-*Cole* interpretations of the statute. *See, e.g., Tucker v. Olympia Dodge of Countryside, Inc.*, 2003 WL 21230604 (N.D. Ill. 2003).

Sunrise contends that it reasonably believed the mailing complied with FCRA. Finally, Sunrise argues that there is insufficient evidence to establish that it knew that any consumer credit reports had been accessed, that such access was improper because the offer did not contain a "firm offer of credit," or that Sunrise knowingly authorized the mailing of a flyer that violated FCRA.

After reviewing the facts and the record and making all reasonable inferences in favor of Triad and Sunrise on Murray's willful noncompliance claim, this Court is unable to conclude that Triad and Sunrise acted willfully as a matter of law. But this Court is likewise unable to conclude that the defendants did not act willfully. In fact, multiple issues of disputed material fact remain regarding whether Sunrise or Triad willfully violated FCRA when it mailed out the "Pre-Approved Notice." *See Phillips*, 312 F.3d at 370-71; *see also Murray v. Fin. Am., LLC*, No. 05 C 1255, 2006 WL 862832, at *4 (N.D. Ill. Apr. 4, 2006).

Thus, this Court finds that defendants violated FCRA by failing to provide a "firm offer of credit" or to make a "clear and conspicuous statement" of certain conditions of the offer on the "Pre-Approved Notice." On the issue of willful noncompliance, summary judgment is inappropriate because disputed issues of material fact remain. For these reasons, Plaintiff's Motion for Summary Judgment is granted in part and denied in part. Defendants' Motions for Summary Judgment are denied.

## Conclusion

For the foregoing reasons, Murray's Motion for Order Deeming Certain Statements of Material Facts Admitted is granted in part and denied in part; Murray's Motion for Summary Judgment is granted in part and denied in part; Sunrise Chevrolet's Motion for Summary Judgment is denied; and Triad Financial Corporation's Motion for Summary Judgment is denied.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **July 31, 2006**